Irvin Joseph LANGEL et al., Appellants,

v.

UNITED STATES of America,
Appellee.

Nos. 71–1081 to 71–1083.

United States Court of Appeals,
Eighth Circuit.

Dec. 8, 1971.

Donald E. O'Brien, Harry H. Smith, Sioux City, Iowa, for appellants.

Evan L. Hultman, U. S. Atty., Robert L. Sikma, Russell A. Eliason, Asst. U. S. Attys., for appellee.

Before MATTHES, Chief Judge, and MEHAFFY and ROSS, Circuit Judges.

ROSS, Circuit Judge.

The defendants in this case were each convicted on three counts of indictments which charged them with (1) knowingly possessing a prohibited firearm (a bomb), made in violation of Chapter 53 of the Internal Revenue Code of 1964 without the payment of a making tax as required by 26 U.S.C. § 5821; (2) knowingly possessing a prohibited firearm which had not been registered to them as required by Chapter 53, Title 26, United States Code, both in violation of 26 U.S.C. § 5861(d) and 26 U.S.C. § 5871; and (3) conspiring with each other and with others to commit said offenses in violation of 18 U.S.C. § 371. From the judgments of conviction, each defendant appeals urging fourteen separate assignments of error. We affirm

the judgments of conviction as to each defendant.

The three defendants were members of the Amalgamated Meat Cutters Union and at the time of the alleged offenses were striking employees of Iowa Beef Processors, Inc. (IBP) at its Dakota City, Nebraska plant. Joe Rosenthal & Sons (JRS) operated a produce company in Sioux City, Iowa and was buying meat from IBP during the strike. On the night of December 9, 1969, destructive devices consisting of a dynamite stick, a fuse and a percussion cap were placed in the gas tanks of three trucks owned by JRS and located on that company's premises in Sioux City. Two of these devices exploded and substantially damaged two trucks. The third device sputtered and failed to explode. It was recovered from the tank of the third truck by an army demolitions expert.

The Government's principal witness was Willis Gray, a union member, a striking employee of IBP, and an admitted participant in the events of that day which led to the bombing of the trucks. Gray testified that on the afternoon of the bombing he was at the union hall in Sioux City and was asked by defendant Greenough to accompany him to a back room where they met defendants Reihe and Langel, and a Bill Hodgins. Gray further testified that at that meeting plans were laid to "hit" JRS, including plans for Gray to pick up and deliver two of the three defendants to the vicinity of the place of business of JRS after nine o'clock that evening. Gray stated that he picked up Reihe and Langel that night in his 1966 bronze colored Mustang car and drove them to a place near the JRS place of business where he let them out and waited at an intersection on a hilltop overlooking the road which passed in front of the place of business of JRS. Two other cars were also waiting. One was a South Dakota Mustang car owned and driven by Kenny McDonald, and the other was a pink and white Pontiac owned by defendant Greenough and driven by Bill Hodgins. Shortly thereafter, Gray picked up Reihe

and Langel (who were running at the time) at the base of the hill and near the railroad tracks which adjoin the JRS property. The other two automobiles followed Gray down the hill and Gray saw defendant Greenough who he thought then got into one of these cars. All three cars then left the vicinity.

Myron Bielski, the night foreman of JRS, testified that he was in charge of loading trucks at the JRS plant that evening and that one of the JRS employees, Jerald Thompson, came running in the building yelling that someone had put firebombs in the trucks. Bielski, Thomas Frazey (another JRS employee), and Thompson chased three men who were leaving the lot, and all three testified that they saw those three men get into the cars coming down the hill on 11th Street. They did not catch them, but all three of them identified the three cars as being an older pink and white Pontiac and two Mustangs. Two of them noted that one of the Mustangs had South Dakota license plates. They then went back to get a car to chase the three men, but a switch engine on the tracks blocked their pursuit. They returned to the JRS yard and shortly thereafter, the gas tanks on two diesel trucks "blew up".

Later that evening, Bielski, Thompson, and Frazier identified the Mustang driven by McDonald with South Dakota plates and the Mustang driven by Gray. Greenough's ownership of a pink and white 1957 Pontiac on December 9, 1969, was established by motor vehicle registrations and titles.

The defendants all testified and denied any participation in the bombings or any knowledge thereof.

## I. GRAND JURY TESTIMONY

During the trial, the defendants requested production of the transcript of the grand jury testimony of Willis Gray. The trial court found a particularized need had been shown, but prior to turning over the transcript to the attorneys for the defendants, the trial court exam-

ined it *in camera* and deleted certain portions which it determined were not material to the trial.[1]

Defendants claim that under Dennis v. United States, 384 U.S. 855, at page 875, 86 S.Ct. 1840, at page 1851, 16 L.Ed.2d 973 (1966), the court erred in not permitting them to see the entire transcript, citing the following statement of the court:

> "The determination of what may be useful to the defense can properly and effectively be made only by an advocate. The trial judge's function in this respect is limited to deciding whether a case has been made for production, and to supervise the process."

This citation is not only inaccurate and misleading in placing a period after the word "process" rather than a colon, but is also incomplete. The entire second sentence reads as follows:

> "The trial judge's function in this respect is limited to deciding whether a case has been made for production, and to supervise the process: for example, to cause the elimination of extraneous matter and to rule upon applications by the Government for protective orders in unusual situations, such as those involving the Nation's security or clearcut dangers to individuals who are identified by the testimony produced."

In this case, the trial court correctly followed these guidelines by eliminating extraneous matter and ruling upon applications by the Government for a protective order involving potential danger to individuals identified by the testimony produced.[2] See Hamilton v. United States, 139 U.S.App.D.C. 368, 433 F.2d 526, 529 (1970).

## II.  EVIDENCE OF POSSESSION

■ Defendants next claim insufficient evidence was adduced by the Government to show the construction or possession of any destructive device by them. While it is true that no direct evidence was adduced to prove that the defendants constructed or possessed the destructive devices, the circumstantial evidence relating thereto was strong and convincing, and it is well established that

> "an offense may be proved by, and the conviction rest upon, circumstantial evidence. United States v. Pope, 415 F.2d 685 (8th Cir. 1969); Peterson v. United States, 411 F.2d 1074 (8th Cir. 1969); United States v. Kye, 411 F.2d 120 (8th Cir. 1969); DeVore v. United States, 368 F.2d 396, 399 (9th Cir. 1966); Doss v. United States, 355 F.2d 663, 667 (8th Cir. 1966); Sadler v. United States, 303 F.2d 664, 665 (10 Cir. 1962); See Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954)." United States v. Robinson, 419 F.2d 1109, 1111 (8th Cir. 1969).

1.  The portions deleted were preserved and presented to this Court on appeal. An examination of this transcript of Gray's grand jury testimony, including the deleted material, clearly indicates that the deleted material, which was a small percentage of the entire testimony, was not relevant nor material to the trial of these defendants on these charges and in some instances the deletions were *necessary for the protection of individuals* not directly involved in this case.

2.  Defendants' counsel made the following statement to the court in connection with the court's ruling on this question:
    "May we say, Your Honor, that we would rely on the Court's good judgment in this matter and if there is a hundred pages of grand jury transcript by this man and only three of them apply in any manner at all to the case we have that we would not expect to see those. If the Court made the flat statement that they did not apply, we would, however, of course, respectfully ask that that statement be kept as a part of the record and possibly sealed and so forth. I don't really care to see it but I think we have to make a good record. But, Your Honor, we are not asking for anything that is going to talk about other cases or other private matters and I understand the Government has evidence that they don't want everybody to have, but we are now talking about the Rosenthal matter."

As stated by this Court in United States v. Holt, 427 F.2d 1114, 1117 (8th Cir. 1970), "[p]ossession may be constructive as well as actual. Mack v. United States [326 F.2d 481 (8th Cir.)], *supra*; United States v. Burch, 313 F.2d 628 (6th Cir. 1963)." In this case there is evidence that the defendants planned to "hit" JRS that evening; that Gray drove two of them to the JRS place of business; that all three of the defendants ran from that place of business a few minutes later and were picked up by two of the three cars waiting for them; that three employees of JRS chased three men leaving the JRS premises about that time and saw them enter two of the three cars waiting for them; that these cars were identified by those employees; that minutes later two trucks exploded and a third destructive device was found which did not explode.

Taking the view of the evidence most favorable to the Government as the prevailing party, including all reasonable inferences to be drawn therefrom, we conclude that the evidence was sufficient to justify the jury's findings that the defendants actually committed the offenses charged. United States v. Skillman, 442 F.2d 542, 547 (8th Cir. 1971); United States v. Bennett, 428 F.2d 772 (8th Cir. 1970); United States v. Fryer, 419 F.2d 1346 (8th Cir.), cert. denied, 397 U.S. 1055, 90 S.Ct. 1399, 25 L.Ed.2d 672 (1970); United States v. Robinson, *supra*, 419 F.2d at 1111. *Cf.* United States v. Adams, 438 F.2d 644 (8th Cir. 1971).

## III. EVIDENCE OF CONSPIRACY

Defendants claim the evidence was insufficient to show a conspiracy or participation in a conspiracy by the defendants, and especially defendant Langel.

■ Willis Gray testified ·as to the meeting at the union hall with all three defendants, although on cross-examination he admitted that Langel arrived at the meeting after it had started. This discussion concerned a "hit" on JRS. This evidence, coupled with the evidence of what actually did take place later that evening in furtherance of the announced intention to "hit" JRS, was sufficient to establish the conspiracy.

■ "Participation in a criminal conspiracy need not be proved by direct evidence; a common purpose and plan may be inferred from a 'development and a collocation of circumstances.'" Glasser v. United States, 315 U.S. 60, 80, 62 S. Ct. 457, 469, 86 L.Ed. 680 (1942). *See also* United States v. Hanon, 428 F.2d 101, 108 (8th Cir. 1970), cert. denied, 402 U.S. 952, 91 S.Ct. 1608, 29 L.Ed.2d 122 (1971); Cave v. United States, 390 F.2d 58, 69 (8th Cir.), cert. denied, 392 U.S. 906, 88 S.Ct. 2059, 20 L.Ed.2d 1365 (1968); Koolish v. United States, 340 F.2d 513, 524 (8th Cir.), cert. denied, 381 U.S. 951, 85 S.Ct. 1805, 14 L.Ed.2d 724 (1965); Isaacs v. United States, 301 F.2d 706, 725 (8th Cir.), cert. denied, 371 U.S. 818, 83 S.Ct. 32, 9 L.Ed.2d 58 (1962). Even though nothing was brought out at the meeting as to what actually would take place, appellants did mention a "hit", and, of course, an agreement constituting a conspiracy may be inferred from the acts of the parties. United States v. Schroeder, 433 F.2d 846, 849 n. 3 (8th Cir. 1970), cert. denied sub nom., Allen v. United States, 400 U.S. 1024, 91 S.Ct. 590, 27 L.Ed.2d 636 (1971). *Cf.* Rizzo v. United States, 304 F.2d 810, 825 (8th Cir.), cert. denied sub nom., Nafie v. United States, 371 U.S. 890, 83 S.Ct. 188, 9 L.Ed.2d 123 (1962); United States v. Harris, 433 F. 2d 333, 335 (4th Cir. 1970).

■■ Appellant Langel argues that he could not be a part of the conspiracy because he came into the particular meeting late, after the discussion was over. However, "a coconspirator may even become a member of the conspiracy without being in on it at its inception. One need only knowingly contribute his efforts in furtherance of it." Nassif v. United States, 370 F.2d 147, 152 (8th Cir. 1966). *Accord,* Miller v. United States, 410 F.2d 1290, 1294 (8th Cir.), cert. denied, 396 U.S. 830, 90 S.Ct. 81, 24 L.Ed.2d 80 (1969). And "where it is established that a conspiracy has been

formed, 'but slight evidence connecting a defendant therewith may still be substantial, and if so, sufficient'." Cave v. United States, *supra*, 390 F.2d at 69, and cases cited therein. *See also* Miller v. United States, *supra*, 410 F.2d at 1294.

## IV. TELEPHONE THREATS

■ Mr. Rosenthal testified on behalf of the Government. He was asked whether or not on the night of December 6, 1969, he recalled any particular event. He answered: "December 6th. You mean middle of the night they called me on—and threatened me." Upon objection by counsel for defendants, the trial court sustained the objection and admonished the jury to "ignore the answer of the witness." The Government prosecutor then continued with his examination of Mr. Rosenthal as follows:

"Q. Mr. Rosenthal, did you receive, on the night of the 6th of December, 1969, phone calls during the course of the night?

MR. O'BRIEN: Just a minute——

A. Yes, I did.

MR. O'BRIEN: Just a minute. I object to that and ask I be permitted to take the matter up with the Court in the absence of the jury."

After defendants' objections were sustained, there were no further questions or answers concerning the alleged telephone threats.

We agree that the remark made by Mr. Rosenthal was objectionable and that the additional question by the Government's attorney was improper after the ruling by the court. However, the second question did not adduce any additional information, and the trial court properly admonished the jury to ignore the remark. Therefore, we do not deem this limited reference to be prejudicial, but consider it to be harmless error. *See* United States v. Schroeder, 433 F.2d 846, 848–849 (8th Cir. 1970). *Cf.* Frazier v. Cupp, 394 U.S. 731, 735–736, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969);

United States v. Christian, 427 F.2d 1299, 1302 (8th Cir.), cert. denied, 400 U.S. 909, 91 S.Ct. 153, 27 L.Ed.2d 148 (1970); Nash v. United States, 405 F. 2d 1047, 1053 (8th Cir. 1969), modified, 429 F.2d 533 (1970); McWilliams v. United States, 394 F.2d 41, 47 (8th Cir. 1968), cert. denied, 393 U.S. 1044, 89 S. Ct. 643, 21 L.Ed.2d 593 (1969).

## V. DESTRUCTIVE DEVICE

■ Defendants contend that the sticks of ammonium dynamite and nitroglycerin, equipped with fuses and percussion caps, were not destructive devices within the meaning of 26 U.S.C. § 5845(f). This section states in part: "The term 'destructive device' means (1) any explosive, incendiary, or poison gas (A) bomb . . .."

In United States v. Oba, 448 F.2d 892 (9th Cir. 1971), the Ninth Circuit answered this contention about a similar homemade bomb by stating as follows:

"In light of the nature of this device and its admitted purpose, it seems absurd to even question its inclusion within the definition of 'destructive device' approved by Congress, or to assert that it is not a weapon."

*See also* United States v. Harflinger, 436 F.2d 928, 929 n. 1 (8th Cir. 1970), in which a bomb consisting of ten sticks of dynamite, a length of slow fuse and a blasting cap were combined with an alarm clock and a six-volt battery. Although *Harflinger* did not raise this precise question, this Court indicated in a footnote that such a device was included within the definition of subsection (f) of 26 U.S.C. § 5845.

## VI. SEGREGATED WITNESSES

Defendants also urge that the trial court erred in refusing to forbid Government witnesses who had testified from visiting with any subsequently called Government witnesses.

■ It is clear that segregation of witnesses is within the sound discretion of the trial judge. *See* De Rosier v. United States, 407 F.2d 959, 961 (8th

Cir. 1969), and cases cited therein. *A fortiori* it is also within the sound discretion of the trial court to instruct or refuse to instruct segregated witnesses concerning communicating with other witnesses after they have testified. United States v. Chiarella, 184 F.2d 903, 907 (2d Cir. 1950), rev'd on other grounds mem., 341 U.S. 946, 71 S.Ct. 1004, 95 L.Ed. 137 (1951), aff'd as modified, 214 F.2d 838 (1954). There was no showing by the defendants that these Government witnesses did talk to each other after testifying or that any prejudice actually resulted to the defendants from the ruling of the trial court.

We have carefully examined each of the other points raised by the defendants (except those abandoned during oral argument) including those relating to the instructions given by the trial court and have found them to be without merit. For the reasons hereinbefore set forth, the judgments of conviction are affirmed.

Clark, Circuit Judge, dissented and filed opinion.