**UNITED STATES of America, Plaintiff-Appellee,**

v.

**William TANKERSLEY and Frank A. Stefanelli, Jr., Defendants-Appellants.**

**No. 73–1762, 73–1761.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 10, 1974.

Decided Feb. 26, 1974.

**964**

Max Cohen, Gary, Ind., for defendants-appellants.

John R. Wilks, U. S. Atty., Fort Wayne, Ind., Andrew Baker, Jr., Asst. U. S. Atty., Hammond, Ind., for plaintiff-appellee.

Before SWYGERT, Chief Judge, KILEY, Senior Circuit Judge, and SPRECHER, Circuit Judge.

KILEY, Senior Circuit Judge.

Defendants Tankersley and Stefanelli, Gary, Indiana school teachers, appeal their conviction by a jury for possession of an unregistered destructive device (Count I) which was not identified by serial number (Count II), in violation of 26 U.S.C. § 5861(d) and (i), respectively, of the National Firearms Act (Act).[1]

---

1. 26 U.S.C. § 5861. It shall be unlawful for any person

\* \* \* \* \*

(d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record, or

\* \* \* \* \*

(i) to receive or possess a firearm which is not identified by a serial number as required by this chapter.

§ 5845(a) The term "firearm" means . . . (8) a destructive device.

We affirm.

In May of 1972 a teachers' strike was in progress in Gary, Indiana. Philip Ryals, a teacher, elected to cross picket lines and report for work during the strike, and aroused the anger of his co-teachers. At approximately midnight on May 17, 1972, police maintaining surveillance on Ryals' home observed Tankersley, Stefanelli, and codefendant Morgan—a vacationing college student and friend of Stefanelli—in front of Ryals' home, lighting what appeared to be a fuse. The police announced themselves, and the defendants fled. The police were required to shoot out a tire of Tankersley's camper bus to prevent the defendants' escape. After removing the defendants, the police searched the camper and found an M–80 firecracker encased in an envelope, some fuse, twine, and a can of paint and varnish remover. In front of Ryals' residence the police found a burned-out M–80 (a dud) inside an envelope with masking tape applied thereto in such a way that the adhesive was turned outward, and three to four inches from the envelope a Diet-Pepsi bottle containing six ounces of paint remover.

The indictment charged possession of "a destructive device composed of a flammable liquid contained in a breakable container, a detonator, and a fuse made from rope impregnated with Potassium Nitrate . . . ."

The government's theory at trial was that Tankersley, Stefanelli and Morgan intended to affix the M–80 to the Pepsi bottle, light the fuse, detonate the M–80, and set off the paint remover. It adduced evidence that an exploding M–80 affixed to a Pepsi bottle would detonate the paint remover inside the bottle. Paint remover in the bottle placed upon a corner of the envelope housing the M–80 was similarly detonated.

Tankersley and Stefanelli maintained that they intended to write the word "Scab" on Ryals' car with the paint remover, and explode the M–80 separately. They argue that the tape was to be used to affix the envelope containing the M–80 to the porch or side of the house. They introduced evidence that at a distance of three or four inches a firecracker's explosion would not set off the paint remover.

The jury acquitted Morgan, convicted Tankersley on both Counts, and convicted Stefanelli on Count I. After motions by Tankersley and Stefanelli, the court ordered the jury to deliberate further with respect to Stefanelli. The jury thereupon convicted Stefanelli on both Counts. Both defendants were sentenced to two years, Stefanelli to serve ninety days and Tankersley six months; the remainder of the sentences were suspended, and both were placed on probation for two years. This appeal followed.

### I.

Defendants contend that the court erred in denying their motion for judgment of acquittal on grounds to be discussed below. We disagree.

### A.

A "destructive device" is defined in 26 U.S.C. § 5845(f) as

(1) any explosive, incendiary, or poison gas (A) bomb, (B) grenade, (C) rocket having a propellent charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device;

(2) any type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore more than one-half inch in diameter, except a shotgun or shotgun shell which the Secretary or his delegate finds is generally recognized as particularly suitable for sporting purposes; and

(3) any combination of parts either designed or intended for use in con-

verting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled.

Therefore, a combination of certain materials, coupled with the requisite intent, can be sufficient to constitute a destructive device.

■ We find no merit in defendants' contention that a fatal variance existed between indictment and proof. The indictment, silent as to whether the device was assembled or not, charged an offense under § 5845(f)(3): a "combination of parts . . . intended for use in converting any device into a destructive device . . ." The proof was not at variance with the charge.

### B.

Defendants next contend that they could not properly be charged under § 5845(f)(3) because their alleged intentions are irrelevant in this case. They properly concede that the Circuits are in conflict as to the meaning of subsection (3), and rely on United States v. Posnjak, 457 F.2d 1110 (2nd Cir. 1972). The second Circuit there held that proof of evil intent could not convert commercial dynamite into a "destructive device" within the meaning of § 5845(f). The court reasoned that the intention of Congress was to prohibit trafficking in articles that had no social utility, and therefore subsection (3) should not be broadened to include socially useful articles such as dynamite. So construed, subsection (3) has limited applicability. Intent is irrelevant when an assembled device falls "within (1) or (2)," because:

> the parts are clearly "designed" to convert the device into a destructive device. When it is equally clear that the end product does not fall within one of those categories, the same is true. When, however, the components are capable of conversion into both such a device and another object not

covered by the statute, intention to convert the components into the "destructive device" may be important. *Posnjak* at 1119.

The Ninth Circuit (United States v. Oba, 448 F.2d 892 (1971): commercial dynamite), and the Fourth Circuit (United States v. Morningstar, 456 F.2d 278 (1972): sticks of black powder and blasting caps), have, contrary to *Posnjak*, decided that evil intention is relevant to whether the articles therein come within the statutory definition.

■ We need not resolve the conflict, however, since under either construction, resort to intention under subsection (3) is proper upon the charge and facts in the instant case. The defendants herein were charged with possession of components "capable of conversion into both [a destructive] device and another object not covered by the statute." *Posnjak, supra*, 457 F.2d at 1119. In United States v. Davis, 313 F.Supp. 710 (D. Conn.1970), the court stated:

> The defendant was found with bottles, rags, and a can of gasoline, [and] the question of whether he intended to convert these components into a Molotov cocktail, a crude but well-known variety of incendiary bomb, was a central issue.

Tankersley and Stefanelli were in possession of a bottle, a firecracker and tape, and paint remover: the components of a Molotov cocktail. A Molotov cocktail is not something like dynamite with a valid social use. United States v. Peterson, 475 F.2d 806, 811 (9th Cir. 1973). While the components separately have social utility, in combination they form a destructive device within the ambit of subsection (3).

■ We are unpersuaded by defendants' attempt to distinguish *Davis* on the ground that the defendant therein admitted his intention to bomb a factory with the Molotov cocktail. The evidence before us justified the jury's implicit finding that Tankersley and Stefanelli intended to convert the material

they possessed into a destructive device. An admission by them was not required.[2]

### C.

■ The Supreme Court in United States v. Freed, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971), conclusively determined that the National Firearms Act does not violate the Fifth Amendment right against self-incrimination, and therefore we reject defendants' contention to the contrary.

### D.

■ Nor is there any merit in defendants' contention that there is no requirement that a destructive device have a serial number. 26 U.S.C. § 5842(c) provides: "Any firearm classified as a destructive device shall be identified in such manner as the Secretary or his delegate may by regulations prescribe." And 26 C.F.R. § 178.92[3] requires that a serial number must be placed upon the destructive device unless circumstances make it "dangerous or impracticable" to do so. Upon information from the transferor the Director may authorize "other means" of identification. Here the destructive device bore neither serial number nor "other means" of identification.

### E.

■■ We reject Stefanelli's contention that since he came into possession of the alleged device shortly before apprehension, he did not have sufficient opportunity to comply with the registration requirements, and accordingly should have been acquitted. Timing is irrelevant here because Stefanelli, a possessor-transferee, could not have registered the device; only transferors can register firearms under the Act.[4] Furthermore, it follows that there was no error in the district judge's refusal to give an instruction based upon this contention.[5]

### II.

■ Prior to the commencement of the final day of the trial, June 13, 1973, government agent Bauer conducted an experiment in which he detonated an M–80 approximately three inches away from a bottle of paint remover. The paint remover was unaffected by the explosion, and Bauer informed government counsel accordingly. Later that morning government counsel, knowing that the M–80 had not exploded the bottle, attempted to impeach a defense witness who had conducted a similar experiment with the same result, using a different type of firecracker, by emphasizing the difference in firecrackers. In rebuttal

2. The court did not err in instructing the jury that although the defendants must have intended to unite the components, unite "did not necessarily mean attaching to. Uniting can mean if it worked as a destructive device it would be sufficient to set the bottle on the firecracker or container of the firecracker, it doesn't necessarily mean it has to be attached." (Tr. 407–408). If the end result is identical, it is specious to argue that one can be guilty if he attaches the components and not guilty if he merely places them in close proximity to each other.

3. 26 C.F.R. § 178.92: Each licensed manufacturer or licensed importer of any firearm . . . shall legibly identify each such firearm by engraving, casting, stamping (impressing), or otherwise conspicuously placing

. . . on the frame or receiver thereof . . . an individual serial number . . . . Provided further, that in the case of a destructive device, the Director may authorize *other* means of identifying that weapon upon receipt of letter application . . . from the licensed manufacturer or licensed importer showing that engraving, casting, or stamping (impressing), such a weapon would be dangerous or impracticable. (Emphasis added.)

4. 26 U.S.C. § 5812(a).

5. Nor did the court err in refusing to give defendants' instruction reciting the statute. The court adequately stated the law to the jury (Tr. 404–405), and defendants' instruction was surplusage.

Bauer testified that an M–80 contains "16% more flash powder than the [firecracker used by the defendants' witness]." (Tr. 362). The defendants having learned, after the trial, of Bauer's early morning experiment, moved unsuccessfully for a new trial.

They contend that the suppression of the information relating to Bauer's experiment, coupled with the disparaging cross examination by the government, violated their right to due process as delineated in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Although we cannot condone the government's tactics, we think that they do not require reversal.

The fact that the experimentally exploding M–80 did not break the bottle three inches away and set off the paint remover was irrelevant, since the three inch separation of the M–80 and the bottle dropped by defendants was purely fortuitous. And the "suppressed" evidence would not "tend to exculpate . . . or reduce the penalty . . . " Brady, 373 U.S. at 88, 83 S. Ct. at 1197. Nor do we find that the government's cross-examination in light of the knowledge of Bauer's experiment deprived defendants of due process.[6]

### III.

 Defense counsel objected to government counsel's stating in final argument:

Ladies and gentlemen, the issue of the possible punishment of these defendants is not before you. That is his Honor's job. It is probably the worst job in the court room, the most difficult. He has an opportunity to look at the probation report. (Tr. 399.)

The court denied a motion for mistrial, but instructed the jury to disregard the statements referring to the probation report.

Defendants contend that the court erred in failing to grant the motion. Assuming arguendo that the government's remarks implied that the defendants would get probation if convicted, and were unfair, our reading of the record as a whole convinces us that the error was harmless and the court was not required to declare a mistrial.

### IV.

Prior to trial, the district court, after a hearing, denied defendants' motion to suppress the evidence discovered in Tankersley's vehicle. The court based its denial on the rationale enunciated in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1924), and Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), that probable cause existed for police belief that the camper contained contraband.

 In the present case the police saw the defendants light something in front of Ryals' home, pursued them on foot, firing shots in the air, and shot out a tire to prevent the defendants' escape. Under these circumstances the police had probable cause to search the vehicle immediately. They could also have seized the camper and searched it at the police station, under Chambers' expansion of the Carroll holding. The court's reliance on those cases was proper, and there was no error in sustaining the search and seizure. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), is inapposite and consequently of no assistance to defendants.

### V.

 We are not persuaded that the verdicts acquitting Morgan, convicting Tankersley on both counts, and convict-

---

6. See United States v. Poole, 379 F.2d 645 (7th Cir. 1967), wherein this court used its supervisory power to reverse a conviction, holding that the government's suppression of evidence deprived defendant of a fundamentally fair trial. In that case, however, the suppressed evidence directly related to the crime charged.

ing Stefanelli on Count I and acquitting him on Count II were inconsistent and require reversal. This court said in United States v. Hickey, 360 F.2d 127, 139 (1966): "[i]nconsistent jury verdicts on separable counts are generally permissible, even though the same evidence is offered in support of each."

Nor did the district judge err in sending the jury back to "deliberate further with regard to . . . Stefanelli." [7] The relevant part of the transcript satisfies us that the judge's language did not effectively mandate a guilty verdict as to Stefanelli on both counts; the jury might have acquitted him on both counts as it did Morgan.

## VI.

There is no merit in defendants' final contention that the district court erred in failing to require the government to elect only one of the two counts for submission to the jury. Defendants argue that since they were charged with a single course of conduct, the government should not be allowed to multiply the punishment by charging them with violating several parts of a single statute.

This contention was answered by the Ninth Circuit in United States v. Clements, 471 F.2d 1253 (1972), and we adopt its reasoning. While agreeing that the statute did not authorize cumulative punishment for violations of three different sections of 26 U.S.C. § 5861, the court affirmed the defendants' conviction but limited the maximum punishment to that which could be imposed for a single violation.[8] The sentences given in the present case do not exceed that maximum, and accordingly were not improper.

Affirmed.

7. Tr. 431.
8. 26 U.S.C. § 5871: a fine of $10,000 and/or a ten year prison sentence.