**UNITED STATES of America,**
**Appellee,**

v.

**Bruce Charles CURTIS et al.,**
**Defendants-Appellants.**

**No. 74–1381.**

United States Court of Appeals,
First Circuit.

Argued May 7, 1975.

Decided Aug. 11, 1975.

James S. Fleming, Worcester, Mass., by appointment of the Court, John F. Buckley, Worcester, Mass., by appointment of the Court, James L. Clifford, Worcester, Mass., by appointment of the Court, and Daniel G. Harrington, Boston, Mass., by appointment of the Court, for defendants-appellants.

Henry H. Hammond, Asst. U.S. Atty., with whom James N. Gabriel, U.S. Atty., was on brief, for appellee.

Before COFFIN, Chief Judge, McEN-TEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

The indictment under which appellants were prosecuted describes two objects alleged to be explosive bombs, one "consisting of approximately five sticks of dynamite bound together and with a fuse attached", the other "consisting of approximately eight to ten sticks of dynamite bound together and with a black box bound to them". With regard to the smaller object, appellant Curtis and David Breault were charged in Count I with possession of a firearm which had not been registered as required by 26 U.S.C. § 5861(d); Curtis and Breault were charged in Count II with transferring the object in violation of 26 U.S.C.

§ 5861(e); and in Count III it was charged that Edward Ankarstran, William Burgess, and appellants O'Brien, Wilkesman and Fleury received and possessed the unregistered firearm in violation of § 5861(d). The larger object was also alleged to be an unregistered firearm and Curtis and Breault were charged with possession (Count IV), and O'Brien, Wilkesman and Fleury with receiving and possessing it (Count V). O'Brien and Fleury were named in Count VI, which charged that they had received stolen dynamite, knowing and having reasonable cause to believe that it had been stolen.[1]

Burgess became the principal prosecution witness and his plea of guilty on Count III was accepted by the district court. Ankarstran committed suicide prior to trial, and Breault was tried separately and acquitted. O'Brien, Curtis, Fleury and Wilkesman were convicted after a jury trial and appeal.[2]

Although a number of different objects can qualify as a "firearm" under the National Firearms Act, the narrow inquiry required here is whether each of the objects allegedly possessed or transferred by appellants is within the statute by virtue of its identity as "a destructive device". 26 U.S.C. § 5845(a)(8). Section 5845(f) of Title 26 provides in relevant part:

> "The term 'destructive device' means (1) any explosive, incendiary, or poison gas (A) bomb, (B) grenade, (C) rocket . . . (D) missile . . . (E) mine, or (F) similar device; (2) any type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile . . . ; and (3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled. The term 'destructive device' shall not include any device

which is neither designed nor redesigned for use as a weapon; . . ."

The indictment charged that each of the two objects here at issue came within the statutory definition because it was an "explosive bomb."

■ Appellants suggest, first of all, that the indictment was insufficient, since neither of the devices was described as containing both the fuse and blasting cap necessary for detonation of the dynamite. Appellants were, however, adequately apprised of the charges being brought against them. The indictment did not simply invoke the term "firearm" contained in the statute, but rather added the specification that each object was "a 'destructive device', to wit, an explosive bomb". The only way in which we could nonetheless conclude that the indictment was insufficient would be to hold that the inclusion of a general description of the two objects—necessary here to distinguish them from each other—gave rise to a requirement that the indictment include every detail of composition which the government intended to prove at trial. We have been pointed to no authority supporting such a proposition, and we reject it as untenable.

■ Appellants' more substantial argument is that commercial dynamite such as that involved here, even when fashioned into a charge in conjunction with fuse and caps, is not a destructive device within the meaning of section 5845(f). *See United States v. Posnjak,* 457 F.2d 1110 (2d Cir. 1972); *United States v. Schofer,* 310 F.Supp. 1292 (E.D. N.Y.1970). *See also United States v. Oba,* 448 F.2d 892, 895 (9th Cir. 1971), *cert. denied,* 405 U.S. 935, 92 S.Ct. 979, 30 L.Ed.2d 811 (1972) (Browning, J., dissenting). With regard to the smaller object, we agree with appellants that insufficient evidence was adduced at trial to support the conclusion that it was a destructive device. Among the confusing welter of cases construing section

---

1. Count VII related to Curtis alone, and was eventually dismissed without trial.

2. The jury returned with verdicts of guilty for all defendants on all counts. Fleury's motion for judgment of acquittal was subsequently granted as to Count VI.

5845(f) perhaps the only principle uniformly adhered to is that the garden-variety dynamite charge is not itself subject to regulation under the National Firearms Act. *Posnjak, supra,* 457 F.2d at 1115–17; *United States v. Morningstar,* 456 F.2d 278, 280–81 (4th Cir.), *cert. denied,* 409 U.S. 896, 93 S.Ct. 135, 34 L.Ed.2d 153 (1972); *Schofer, supra,* 310 F.Supp. at 1297; *See United States v. Oba, supra,* 448 F.2d at 894 (majority opinion). The government's evidence with regard to the smaller device was not sufficient to support a conclusion that the object was anything more than "the familiar industrial blasting charge". *Schofer,* 310 F.Supp. at 1297.

We realize that this gap in the government's case was not of its own doing. The prosecution repeatedly asserted its desire to produce evidence that the two devices were actually detonated, one being placed under a fuel-oil tank and the other just outside a residence. The government might thus have brought itself within the line of cases holding that a dynamite charge may become a destructive device if intended for use as a bomb. *Morningstar; Oba; Langel v. United States,* 451 F.2d 957, 962 (8th Cir. 1971). *But see Posnjak,* 457 F.2d at 1119–20, *and Oba,* 448 F.2d at 900–01 (Browning, J., dissenting) (arguing that the "designed or intended for use" language of § 5845(f)(3) does not bring within the statute any combination of parts which, when assembled, is not within either subparagraph (1) or (2)). The district judge, however, excluded all evidence on what appellants intended to or actually did do with the device, apparently because of a belief that this exclusion of evidence of conduct which might in itself be criminal was "the traditional way of trying . . . criminal cases." There was, so far as we can tell, no specific finding that all of the government's proffered evidence was so prejudicial as to justify refusal to admit it, and the court nowhere directly responded to the government's suggestion that such evidence might be necessary to make out one of the elements of the offenses charged.

Since the government's willingness to present the evidence cannot alter the fact that it was not presented, the convictions on Counts I, II, and III must be vacated. If defendants are retried the district court should assess both the probative value of the proffered evidence (to the extent that the court determines that intent is an issue), Fed.Rule Evid. 404(b), and the danger of unfair prejudice to defendants, Fed.Rule Evid. 403. *See United States v. Eatherton,* 519 F.2d 603 (1st Cir. 1975).

Burgess provided the following description of the larger device on direct examination by the Assistant United States Attorney:

"Q Now coming back to the second object which was . . . the second object, would you describe that object in as much detail as you can?

I think you said it was eight to ten sticks of dynamite?

A Yes, sir, I can.

Q And what else did you say about it?

A When he took it out, Bruce Curtis took it out of the bag and handed it to Ronald Fleury, it was like bunched together in a big pile and it was some white string-like tape around this one and on the side of the thing there was a black box like a small alarm clock box, and right below that there was like a timer, looked like a clock, the guts of a clock, and from the clock to the top if (sic) this box, there was some different colored wires. And that was more or less what it looked like to me.

Q Was the black box taped onto the dynamite?

A Yes, sir, it was."

■ Appellants urge that this larger device is also beyond the reach of the statute, but we must disagree. We could accept their conclusion only if we held that no device in which dynamite was the explosive material could constitute a statutory "destructive device". Not even the cases relied on most heavily by appellants go that far. In *United*

*States v. Posnjak,* for example, a conviction based upon possession and transfer of dynamite, blasting caps and fuse was voided, but the court explicitly recognized that "dynamite might be the explosive material in a device which would fit under the definition." 457 F.2d at 1117. The statutory purpose would be ill-served by an interpretation which excluded from coverage "home-made" bombs having no lawful use simply because one of the components was dynamite, a material not in itself regulated as a firearm. Thus, while gasoline, bottles and rags all may be legally possessed, their combination into the type of home-made incendiary bomb commonly known as a Molotov cocktail creates a destructive device. *See, e. g., United States v. Tankersley,* 492 F.2d 962 (7th Cir. 1974); *United States v. Ross,* 458 F.2d 1144 (5th Cir.), *cert. denied,* 409 U.S. 868, 93 S.Ct. 167, 34 L.Ed.2d 118 (1972); *United States v. Banks,* 368 F.Supp. 1245 (D.S.D.1973); *United States v. Davis,* 313 F.Supp. 710 (D.Conn. 1970). Similarly, a home-made time bomb such as the larger device here was alleged to be is not excluded from the statute by virtue of the fact that its explosive power is derived from commercial dynamite. *United States v. Harflinger,* 436 F.2d 928 (8th Cir. 1970), *cert. denied,* 402 U.S. 973, 91 S.Ct. 1660, 29 L.Ed.2d 137 (1971); *see United States v. Peterson,* 475 F.2d 806 (9th Cir.), *cert. denied,* 414 U.S. 846, 94 S.Ct. 111, 38 L.Ed.2d 93 (1973).

■ Appellants urge that the delay between their indictment on July 12, 1973 and the commencement of their trial on October 2, 1974 denied them their right to a speedy trial. *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), provides the controlling statement of the standard to be applied and requires, in our view, that this Sixth Amendment claim be rejected. Even if the delay of less than 15 months be considered sufficient to trigger inquiry in a case of this complexity, appellants' argument is seriously undermined by their failure to request a speedy trial.

407 U.S. at 531–32, 92 S.Ct. 2182. Although two of the other defendants filed such motions in March and May of 1974, appellants made no mention of the issue until the trial opened in October. There has been, moreover, no substantial allegation of prejudice as in *United States v. Fay,* 505 F.2d 1037 (1st Cir. 1974).

■ Appellants raise a number of other issues, but after reading the trial transcript we have concluded that none of these requires lengthy discussion in this opinion. The procedures by which the jury was selected were painstakingly thorough and in no way improper. The court did not abuse its discretion in refusing to order a psychiatric examination of Burgess, whose competence the trial judge had ample opportunity to assess, during both this trial and that of Breault which had preceded it. Past convictions of and pending actions against the government witnesses, as well as their past drug use and the fact that some had received favors from the government, were fully revealed to the jury. The district judge gave full instructions on credibility, and was not obliged to strike the testimony of these witnesses. There was no abuse of discretion either in granting an exception to the witness-sequestration order for the government's principal investigator or in allowing the use and display of demonstrative models of the alleged bombs. Appellants allege impairment of their right to cross-examine government witnesses, but point only to the exclusion of a single question on re-cross-examination.

■ Lastly, any argument based upon Burgess' post-sentencing claim that, despite his repeated statements to the contrary at the trial and at his own sentencing, he had received and believed an assurance of "immunity" from the government, must in the first instance be presented to the district court as a possible ground for new trial.

*Convictions vacated on Counts I, II and III; convictions affirmed on Counts IV, V and VI. Sentences vacated; remanded for resentencing.*