**Dennis Allen BURCHFIELD, Petitioner-Appellant,**

v.

**UNITED STATES of America, Respondent-Appellee.**

No. 76–1193.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 27, 1976.

Decided Nov. 16, 1976.

Dennis Allen Burchfield, Danville, Ill., Richard D. Price, Jr., Peoria, Ill., for petitioner-appellant.

David E. Worsley, Danville, Ill., for respondent-appellee.

Before FAIRCHILD, Chief Judge, PELL, Circuit Judge, and WOLLENBERG, Senior District Judge.*

* Senior District Judge Albert Charles Wollenberg of the Northern District of California is sitting by designation.

PELL, Circuit Judge.

The appellant, Dennis Allen Burchfield, was charged in a two count indictment on August 21, 1972. Count I of the indictment charged that Burchfield did wilfully and knowingly possess a destructive device as defined by Section 5845, Title 26, United States Code, to wit: three sticks of "Austin" brand 40% dynamite each marked B1356003–02–12227104 and three "Atlas" brand electric blasting caps with orange and yellow leg wires, one six-volt lantern battery and one coil of red plastic-covered power cord, which had not been registered to him with the Secretary of the Treasury or his delegate, as required by Section 5841, Title 26, United States Code; in violation of Section 5861(d), Title 26, United States Code. Count II of the indictment is not directly involved in this appeal. On September 15, 1972, Burchfield after consultation with counsel entered a plea of guilty to Count I. Count II was dismissed. He was placed on probation. In April of 1975, he was found to be in violation of probation and was sentenced to imprisonment.

In November 1975, Burchfield filed his motion to vacate sentence pursuant to 28 U.S.C. § 2255. The present appeal followed the denial of the motion. Briefs were filed in this court on both a pro se basis and by counsel. The principal contention presented in both briefs and upon oral argument is that the indictment to which Burchfield pleaded guilty fails to state an offense against the laws of the United States.

For the purpose of this appeal the pertinent portion of 26 U.S.C. § 5845 is as follows: [1]

(f) *Destructive device.*—The term "destructive device" means (1) any explosive . . . (A) bomb, . . . and (3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled.

It would appear that the items listed as being in the possession of Burchfield did not describe an assembled bomb. The statute, however, also includes within the definition of destructive device a combination of parts either designed or intended for use in converting any device into a destructive device as previously defined.

The circuits have apparently not been in agreement as to whether a criminal charge arising out of the possession of commercial explosives is includable within the statutory definition of a destructive device. The appellant cites in support of his position *United States v. Curtis,* 520 F.2d 1300 (1st Cir. 1975); *United States v. Posnjak,* 457 F.2d 1110 (2d Cir. 1972), and *United States v. Schofer,* 310 F.Supp. 1292 (E.D.N.Y.1970). These cases can be read as supporting the general proposition that Congress did not

1. The full text of the statutory definition of "destructive device" is as follows:

(f) *Destructive device.*—The term "destructive device" means (1) any explosive, incendiary, or poison gas (A) bomb, (B) grenade, (C) rocket having a propellent charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device; (2) any type of weapon by whatever name known which will, or which may be readily converted, to expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter, except a shotgun or shotgun shell which the Secretary or his delegate finds is generally recognized as particularly suitable for sporting purposes; and (3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled. The term "destructive device" shall not include any device which is neither designed nor redesigned for use as a weapon; any device, although originally designed for use as a weapon, which is redesigned for use as a signaling, pyrotechnic, line throwing, safety, or similar device; surplus ordnance sold, loaned, or given by the Secretary of the Army pursuant to the provisions of section 4684(2), 4685, or 4686 of title 10 of the United States Code; or any other device which the Secretary of the Treasury or his delegate finds is not likely to be used as a weapon, or is an antique or is a rifle which the owner intends to use solely for sporting purposes.

intend to require the registration of a commercial explosive such as dynamite irrespective of the intent with which the material was possessed. However, language in *Curtis, supra* at 1303, would seem implicitly to recognize that "a dynamite charge may become a destructive device if intended for use as a bomb." In that case the trial judge had excluded evidence of intent so the question was not reached. Contrary to the underlying premise of the above cited cases, at least three circuits have found that dynamite may become a destructive device if intended for use as a bomb. *Langel v. United States*, 451 F.2d 957 (8th Cir. 1971); *United States v. Oba*, 448 F.2d 892 (9th Cir. 1971), *cert. denied*, 405 U.S. 935, 92 S.Ct. 979, 30 L.Ed.2d 811 (1972); *United States v. Morningstar*, 456 F.2d 278 (4th Cir. 1972). This circuit recognized the conflict but found in the case before it that it was unnecessary to resolve the conflict in *United States v. Tankersley*, 492 F.2d 962 (7th Cir. 1974). It is to be noted, however, that *Tankersley* did not involve commercial explosives but the considerably more innocuous components of a Molotov cocktail, *i. e.*, a bottle, a fire cracker, tape, and paint remover. All of the above cases involved challenges to the sufficiency of the indictment on direct appeal proceedings. The present case, however, is not that type of proceeding but is a collateral § 2255 review.

█ The cases in this circuit, indeed cases in every circuit which have come to our attention, demonstrate beyond question that the standard of review where the question presented is the sufficiency of the indictment is substantially different in the case of the collateral § 2255 challenge than that which is involved in the direct appeal situation. In the § 2255 situation the indictment cannot be questioned unless it is so defective on its face as not to charge an offense under any reasonable construction. *Strauss v. United States*, 347 F.2d 691, 692 (7th Cir. 1965). The type of facial defect required to raise successfully a challenge in

this situation has been characterized as "obviously defective." *United States v. Vanderberg*, 358 F.2d 6, 10 (7th Cir. 1966). In one of the more recent cases enunciating the standard. *Tallman v. United States*, 465 F.2d 282, 286 (7th Cir. 1972), the court referred to previous cases and the standards established. The defect must be of a fundamental nature, the sufficiency of an indictment is not subject to collateral attack save in exceptional circumstances, and the indictment must be so defective on its face as not to charge any offense under any reasonable construction. In *Tallman*, this court held that the petitioner's attack grounded on the absence of scienter and the vagueness of "indecent" and "profane" plainly did not meet the necessary standard.

If this court were to adopt the position of *Schofer, Posnjak*, and the dissenting opinion of Judge Browning in *Oba* to the effect that under no circumstances could the statute in question include commercial explosives, then arguably, notwithstanding the guilty plea, it might be that the indictment would not be susceptible of charging an offense under any reasonable construction. We are satisfied, however, that the better view is that set forth in *Langel*, the majority opinion in *Oba*, and *Morningstar*.[2] While *Tankersley* purports not to resolve the conflict, this court nevertheless had no difficulty in finding under subsection (f)(3) that the intent to convert innocuous materials into a destructive device, *i. e.*, an incendiary bomb in that case, was sufficient to sustain the indictment in a direct appeal. Further, we find that one of the latest cases on the subject, *Curtis, supra*, although relied upon by Burchfield as following the earlier cases including *Posnjak*, did not go so far as to say that no device in which dynamite was the explosive material could constitute a statutory "destructive device." *Id.* at 1303. The *Curtis* court pointed out that even in *Posnjak*, the court explicitly recognized that dynamite might be the explosive material in a device which would fit under the definition. The court then observed that "[t]he

---

2. This opinion has been circulated among all judges of this court in regular active service. No judge favored a rehearing *en banc* on the

question posed by the conflict between the circuits and the position adopted thereon in this opinion.

statutory purpose would be ill-served by an interpretation which excluded from coverage 'home-made' bombs having no lawful use simply because one of the components was dynamite, a material not in itself regulated as a firearm." *Id.* at 1304.

■ Again, we emphasize the difference in the standard of review applicable to the § 2255 situation. Count I of the present indictment would seem beyond question to have charged a combination of parts usable in converting the parts into an explosive bomb under subsection (f)(1)(A) of § 5845. It is true that the indictment did not charge in the statutory words applicable to a combination of parts either "designed or intended for use." The sufficiency of the indictment might well have been subject to challenge in the original criminal proceedings in which case the opportunity would have existed for a superseding indictment utilizing the wording of the statute.

While the wording of the court is strong, there is considerable merit in the § 2255 situation in the language of the opinion in *Keto v. United States*, 189 F.2d 247, 251 (8th Cir. 1951):

> The orderly administration of criminal justice demands that a defendant who is dissatisfied with the form or substance of an indictment or information filed against him shall make that known to the trial court at or before the time when sentence is imposed, and shall appeal from any judgment which he contends is based upon a defective indictment or information. It would create an intolerable situation if defendants, after conviction, could defer their attacks upon indictments or informations until witnesses had disappeared, statutes of limitation had run, and those charged with the duty of prosecution had died, been replaced, or had lost interest in the cases.

In our opinion the indictment as set forth in Count I is not so defective on its face as not to charge an offense under any reasonable construction.

On this appeal Burchfield's appointed counsel raises only the question of the sufficiency of the indictment. Burchfield's pro se brief raises two additional issues, one the competency of his retained counsel and the other the failure of the sentencing court to determine if there was a factual basis for the plea, the latter issue being raised for the first time on appeal and the former matter being presented only in a general conclusory manner in the petition to vacate.

From our examination of the record we find no merit in either of these two additional issues which the petitioner has attempted to raise.

Accordingly, the judgment of the district court is

AFFIRMED.