UNITED STATES of America,
Plaintiff,

v.

ONE 1972 CHEVROLET EL CAMINO
PICKUP TRUCK, IDENTIFICATION
NUMBER 80W2k516391, Defendant.

Civ. No. 73-0-194.

United States District Court,
D. Nebraska.

Nov. 7, 1973.

G. Roderick Anderson, Asst. U. S. Atty. for the District of Nebraska.

James A. Nanfito, Omaha, Neb., for defendant.

## MEMORANDUM DECISION

DENNEY, District Judge.

This is an action for the forfeiture of a pickup truck owned by Ronald Goodloe. It has been tried to the Court without a jury. In accordance with Rule 52 of the Federal Rules of Civil Procedure, this opinion shall constitute the findings of fact and conclusions of law of the Court. Jurisdiction is established pursuant to 28 U.S.C.A. § 1345 and 26 U.S.C.A. § 7323.

Defendant truck was stopped by a State Patrolman on Interstate I-29 in the State of South Dakota at 10:00 P. M., on October 23, 1972. A search of the vehicle revealed three hand-grenade fuze assemblies hidden in the battery compartment. In this suit, the Government contends that the fuze assemblies are firearms required to be registered by the National Firearms Act Amendments of 1968, 26 U.S.C.A. § 5801 et seq., that the fuze assemblies were not so registered, and that, as such, the forfeiture should be sustained pursuant to 49 U.S.C.A. §§ 781, 782. The latter statutes provide for forfeiture of any vehicle used in the transportation of any firearm with respect to which there has been committed any violation of the National Firearms Act.

The Government at trial proved that the fuze assemblies were unregistered as alleged. The balance of the Government's evidence was directed toward establishing that the fuze assemblies in and of themselves and without need of further modification or additional explosives are "destructive devices" within the meaning of 26 U.S.C.A. § 5845(f). "Destructive devices" are included within the statutory definition of firearm for the purpose of National Firearms Act Amendments of 1968, *supra*.

In this regard, the Government's witness, Special Agent John Cronin of the Treasury Department, testified that the fuze assemblies had been turned over to him by the South Dakota State Patrolman. Cronin told of taking the fuze assemblies to an open field, where he individually disarmed the devices. According to Cronin, each fuze assembly exploded with a loud "pop" and a flash of light. As a result of the explosion, the fuze assembly separated into its component parts. Upon questioning by the Court, Cronin compared the "pop" to that of a firecracker.

A firearm analyst of the Treasury Department, Robert Scroggie, testified that fuze assemblies of the type herein are used in a Model M21 Practice Hand-Grenade by the military. These grenades are used to teach enlisted men and officers the operation and use of combat grenades. Each practice grenade consists of a fuze assembly, a 21 grain black powder filler, a small cork, and a round metal body. In use, the practice grenade is thrown by the trainee some 30–40 yards a period of four to five seconds elapses, then a loud "pop" is heard, and white smoke may be seen coming from the grenade body where the cork has been blown away. No fragmentation of the grenade body occurs and no fragment other than the small cork separates from the practice grenade as a result of the explosion. Some heat is generated and the grenade body is allowed to cool for a few minutes before it is retrieved. Following retrieval, the grenade body is fitted with a new fuze assembly, another black powder filler and cork, and is ready to be reused by the trainees. Cronin testified that if the fuze assembly was allowed to explode in the hand of the thrower it could cause a burn or laceration of the hand.

The Court has reviewed the cases that have construed the "destructive devices" definition in 26 U.S.C.A. § 5845(f) in light of the foregoing evidence regarding the destructive nature of the fuze assemblies and concludes that the firecracker-like fuze assemblies do not rise to the level of the "destructive devices" definition as so interpreted. The cases, with one exception,[1] appear to have all involved devices with more than the little, if any, capability for destruction of life or property present herein. *See*, e. g., United States v. Ross, 458 F.2d 1144 [5th Cir. 1972] (Molotov Cocktails), Langel v. United States, 451 F.2d 957 [8th Cir. 1971] (Sticks of ammonium dynamite and nitroglycerin, equipped with fuses and percussion caps), United States v. Peterson, 475 F.2d 806 [9th Cir. 1973] (fusee flare casing, black powder and cotton rope for fuse).

Moreover, § 5845(f) itself contains the limitation on the "destructive device" definition that a "destructive device" does not include any device not designed or redesigned for use as a weapon. The evidence as recited shows that the fuze assemblies were designed for training purposes, not as weapons, and there was no evidence that the fuze assemblies had been redesigned for such use.

In short, whatever danger is present in the fuze assemblies is potential, not inherent, and as such not proscribed by the National Firearms Act Amendments of 1968, *supra*. United States v. Schofer, 310 F.Supp. 1292, 1297 [E.D.N.Y. 1969].

An order dismissing this suit will be entered contemporaneously herewith.

---

1. The exception noted is United States v. Kiliyan, 456 F.2d 555 [8th Cir. 1972], wherein the 8th Circuit Court of Appeals held that a practice grenade of the type described in this case is a "destructive device" within the meaning of 26 U.S.C.A. § 5845(f). This Court finds that decision to be questionable, since the 8th Circuit opinion compares the 21 grain black powder filler as the same amount of powder used in an actual combat grenade and concludes that such practice grenade upon explosion should fragment, which is direct contradiction to the Government's expert testimony in this case.