UNITED STATES of America,
Plaintiff–Appellee,

v.

Robert B. PRICE, Jr.,
Defendant–Appellant.

No. 88–1742
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

June 29, 1989.

Rehearing Denied Aug. 2, 1989.

Charles Louis Roberts, El Paso, Tex., Martin Underwood, Comstock, Tex., for defendant-appellant.

LeRoy Morgan Jahn, Asst. U.S. Atty., Helen M. Eversberg, U.S. Atty., Philip Police, Asst. U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before POLITZ, KING and SMITH, Circuit Judges.

POLITZ, Circuit Judge:

Convicted of possession of an unregistered firearm, 26 U.S.C. §§ 5861(d)[1] and 5871, Robert Price appeals, contending that his conviction should be reversed because: (1) the grenade components involved in the offense were seized as a result of an illegal search; (2) the district court erred in admitting extraneous offense evidence; (3) the evidence was insufficient to sustain the conviction; (4) the definition of "destructive device" in 26 U.S.C. § 5845(f) fails to provide adequate notice that it encompasses the unassembled components of a hand grenade; and (5) the trial court failed to instruct the jury on the element of intent. Finding sufficient evidence to support the conviction and perceiving neither clearly erroneous finding of fact nor error of law, we affirm.

## Background

In January 1987 Robert Price, a Del Rio, Texas firearms dealer, became the focus of an investigation by agents of the Treasury Department's Bureau of Alcohol, Tobacco, and Firearms (ATF). The ATF suspected that Price, who operated from his residence as the "Smoke Pole Trader," was involved in the sale of unregistered, fully-automatic rifles and hand grenades to Mexican national Xavier Garza de la Guerra. The agents contacted David Smith, who knew Price, and persuaded him to pose as a purchaser of firearms. Smith agreed and allowed the agents to record his conversations with Price. No sale of weapons was consummated.

On February 4, 1987, ATF agents secured a warrant authorizing the search of Price's home for all documents relating to firearm transactions made after January 1, 1983.[2] In addition to the documents, the

---

**1.** It shall be unlawful for any person—

\* \* \* \* \* \*

　(d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record

　．　　．　　．　　．　　．

26 U.S.C. § 5861(d).

**2.** The warrant authorized the agents to search for:
1. All invoices covering the purchases of firearms by Price since January 1, 1983.
2. All Acquisition and Disposition records covering the purchase and sale of all firearms acquired by Price since January 1, 1983.

agents discovered a variety of weapons and parts including nine hand grenade hulls, each with a threaded hole in the bottom, eight threaded male pipe fittings that fit into the hulls, grenade detonators, pyrotechnic fuses, primers, and several pounds of gunpowder. Price also possessed a flier entitled "GRENADES, Arming the MKII Practice Grenade." Price had not registered the grenades with the ATF.

Price was indicted for possession of an unregistered firearm, to wit, components that readily could be assembled into a hand grenade, 26 U.S.C. §§ 5861(d) and 5871; illegal manufacture of machine guns, 26 U.S.C. §§ 5822, 5861(f), and 5871; and possession of an unregistered firearm silencer, 26 U.S.C. §§ 5861(d) and 5871. After a hearing, the district court denied Price's motion to suppress evidence seized during the search of his home. At trial, an ATF explosive expert testified that in about 10 minutes he could "readily assemble" a fragmentation grenade from the components found in Price's house. The expert added that a grenade constructed from those parts would be as deadly as a military grenade even though the hulls were not of military origin and were similar to those commonly used as paperweights. The jury found Price guilty of possession of an unregistered firearm, but acquitted him on the remaining counts. Price timely appeals.

### Analysis

1. Illegal seizure.

■ Price first challenges the district court's finding that the grenade parts were discovered in plain view during a lawful search of the premises, and were lawfully seized under the plain view exception to the fourth amendment's warrant requirement. A valid "plain view" seizure requires that: (1) the officer made a lawful intrusion into the place where the item was viewed; (2) the officer discovered the item inadvertently; *i.e.,* he was unaware of its location in advance and had no prior intention to seize

the item under the umbrella of the plain view doctrine; and (3) the officer immediately recognized the item as contraband or possible evidence of a crime. *United States v. Espinoza,* 826 F.2d 317, 318 (5th Cir.1987). Price contends that the discovery of the grenade components could not have been inadvertent because he admitted during the recorded conversations with David Smith, the informant, that he possessed the components, thus supplying the ATF with probable cause to believe that the contraband would be found.

The factual findings of the district court with regard to the requirements of a qualifying plain view search may be rejected on appeal only if found to be clearly erroneous. This standard requires us to accept the findings of the trial court unless, after giving due regard to the opportunity of the trial court to judge the credibility of the witnesses, we are left with the "definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

Our view of the record impels no such conclusion. A discovery may be deemed inadvertent if "the police could reasonably and in good faith either have failed to recognize the existence of probable cause or believed that there was insufficient evidence of probable cause to search." *United States v. $10,000 in U.S. Currency,* 780 F.2d 213, 218 (2d Cir.1986). The ATF agent testified that he did not ask for a warrant to search for the grenades because "the [Assistant] United States Attorney ... felt like we didn't have probable cause to obtain a warrant for contraband items." The district court obviously credited the agent's testimony in finding that the discovery of the grenades was inadvertent. There is no evidence in the record which suggests that the search exceeded the scope of the warrant. We hold that the trial court did not err in refusing to suppress the fruits of the search.

---

3. All Firearms Transaction Records, ATF Form 4473, covering the transfer of all firearms by Price since January 1, 1983.

4. All address books and telephone number records maintained by Robert Bruce Price, Jr.

2. Extraneous offense evidence.

 Price next contends that the recording of his conversation with David Smith regarding the purchase of firearms was evidence of extraneous offenses and should have been excluded under Fed.R. Evid. 404(b). There was no error in admitting the complete recording. Where evidence is "inextricably intertwined" with the charged offense, it is relevant and not extraneous. *United States v. Sepulveda*, 710 F.2d 188, 189 (5th Cir.1983). If the challenged extraneous evidence is inseparable from the evidence of the charged offense, "it is unnecessary to consider [its] admissibility ... under Fed.R.Evid. 404(b)." *United States v. Lamp*, 779 F.2d 1088, 1095 (5th Cir.), *cert. denied*, 476 U.S. 1144, 106 S.Ct. 2255, 90 L.Ed.2d 700 (1986). In the conversations with Smith, Price admitted manufacturing rifles for sale to Garza for which he was indicted. Those statements are understandable only in context and cannot be severed from the remaining taped conversation.[3]

3. Insufficiency of evidence.

 Price next maintains that evidence of his possession of unassembled grenade components was insufficient to support his conviction for possession of an unregistered firearm, 26 U.S.C. § 5861(d). In evaluating the sufficiency of evidence, we must consider the evidence in the light most favorable to the government, drawing all reasonable inferences and making all credibility choices which support the jury's verdict. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). The evidence is sufficient if a rational trier of fact could have found the essential elements of the charged crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

 Among the type of "firearms" proscribed by federal law is "a destructive device," 26 U.S.C. § 5845(a)(8), defined by 26 U.S.C. § 5845(f) as, among other things,

"any grenade ... [or] any combination of parts either designed or intended for use in converting any device into a [grenade]." A homemade explosive device is a destructive device within the meaning of section 5845(f) even though all of its components may be possessed legally. *United States v. Campbell*, 685 F.2d 131 (5th Cir. 1982). Moreover, unassembled components fit within the definition of a destructive device if the defendant possesses every essential part necessary to construct an explosive device, and if those parts may be assembled readily. *See United States v. Malone*, 546 F.2d 1182 (5th Cir.1977) (reversing a conviction for possession of a grenade-type destructive device where defendant did not possess gunpowder or other explosive material to arm it). The government presented evidence that Price possessed everything required to build a grenade in short order. Price's claim for insufficiency of the evidence is without merit.

 As an alternative to his insufficiency argument, Price contends that the definition of the term destructive device in section 5845(f) is unconstitutionally vague because it fails to give adequate notice that it includes a collection of components from which a grenade may be constructed. The due process clause, of course, requires that penal statutes define criminal offenses with sufficient specificity so that an ordinary person can understand what conduct is prohibited. *United States v. Daniel*, 813 F.2d 661 (5th Cir.1987). Section 5845(f) meets this test: "On its face, the definition of a destructive device gives fair notice to a person of ordinary intelligence that it includes any combination of parts intended to be used as a bomb or weapon and from which a bomb or weapon can be readily assembled." *United States v. Morningstar*, 456 F.2d 278, 281 (4th Cir.), *cert. denied*, 409 U.S. 896, 93 S.Ct. 135, 34 L.Ed. 2d 153 (1972). *See also, United States v. Ross*, 458 F.2d 1144 (5th Cir.), *cert. denied*,

---

**3.** In any event, Rule 404(b) is not a bar to the admission of the tapes because the district court found that, to the extent that the challenged evidence was extraneous, it was also probative of Price's knowledge, intent, and motive and that the probative value of the evidence outweighed any prejudicial impact.

**338**

409 U.S. 868, 93 S.Ct. 167, 34 L.Ed.2d 118 (1972) (definition of destructive device gave fair notice that it included Molotov cocktails).

Finally, Price contends that the district court committed reversible error in failing to instruct the jury that to convict it must find that Price possessed the grenade components "with intent to convert them into a bomb or destructive device." In determining the adequacy of jury instructions the charge is reviewed in its entirety. *See Davis v. McAllister,* 631 F.2d 1256 (5th Cir.1980), *cert. denied,* 452 U.S. 907, 101 S.Ct. 3035, 69 L.Ed.2d 409 (1981). Specific instructions may not be judged in artificial isolation, but must be viewed in the context of the overall charge, and the charge's correctness is measured not by isolated passages but in light of the charge as a whole. *United States v. Rouse,* 452 F.2d 311 (5th Cir.1971).

In the case at bar, the jury was instructed that the government was obligated to prove two elements to convict Price of violating 26 U.S.C. § 5861(d):

One: that the Defendant knowingly possessed a firearm as I have defined it in the term earlier. And, Two: that the firearm was not then registered to the Defendant.

The court defined "firearm" to include "any combination of parts, either designed *or intended for use in converting any device into a destructive device* such as a grenade, and from which a destructive device may be readily assembled." The instructions, read together, required the jury to first decide whether the grenade components comprised a "firearm." That determination necessarily encompassed a finding that the grenade components were "either designed or intended for use in converting" a device into a destructive device. The jury was adequately apprised of the intent element.

For the foregoing reasons, the conviction is AFFIRMED.