**UNITED STATES of America,**

v.

**Sandy Lynn WORSTINE, and David Wayne Evans.**

**No. FCR 92–25.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Dec. 2, 1992.

Deborah M. Leonard, Asst. U.S. Atty., Fort Wayne, IN, for U.S.

Patrick J. Arata, Ft. Wayne, IN, for David Wayne Evans.

Randall J. Hammond, Tremper, Bechert, Leonard & Terrill, Fort Wayne, IN, for Sandy Lynn Worstine.

## MEMORANDUM AND ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court for a decision following a trial to the bench which was held on November 9, 1992. At the conclusion of the evidence on November 9, the court took this matter under advisement, directing the government and defendants to file post-trial briefs by November 19, 1992, and any reply briefs by November 24, 1992. Defendant David W. Evans filed his Memorandum of Law on November 18, 1992, and Defendant Sandy L. Worstine filed his Post–Trial Brief on November 19, 1992, while the government filed its Post Trial Memorandum on November 19, 1992. The government filed a reply brief on November 24, 1992.

The following findings of fact and conclusions of law are entered after having examined the entire record and after determining the credibility of the witnesses.

*Factual Background* [1]

The quandary in which Sandy Worstine and David Evans now find themselves embroiled began sometime in June of 1992. Because he liked the explosive blasts of firecrackers, Worstine wanted to get his hands on some powerful pyrotechnics for the upcoming Fourth of July holiday.[2] However, Worstine thought the tires on his truck were inadequate, and he decided not to drive from his Fort Wayne, Indiana home to Tennessee to purchase legal firecrackers. Consequently, Worstine set out to make some home-made firecrackers. Worstine "had a feeling" that it was illegal for him to make firecrackers.

Purchasing the materials at a local hardware store, Worstine constructed an exploding device from "low explosive" black gun powder, fuse, galvanized metal end caps, and a five inch length of $1''$ diameter galvanized metal pipe. After construction, Worstine thought this galvanized metal device was too potentially dangerous, so he set this device aside, and went about making a less hazardous apparatus. After purchasing some $\frac{1}{2}''$ diameter plastic PVC tubing and PVC end caps, Worstine fashioned his second type of home-made device from the black powder and the brittle plastic PVC materials rather than the galvanized metal materials. After a test explosion of this PVC explosive device, Worstine fashioned several similar devices from the same PVC materials. These PVC devices were approximately three to four inches in length, each filled about half full of black powder.

On or about June 27, at a party at his mobile home, Worstine displayed the home-made "firecrackers" to acquaintance David Evans. In turn, Evans purchased ten of these PVC explosive devices from Worstine for a total of $15. A few days later, Evans acquired 17 more of these PVC exploding devices from Worstine, who agreed to defer a $25 payment for this second procurement. Subsequently, Evans exploded some

---

**1.** The following factual matters were presented during the testimony in the trial of this cause. Circumstances which concern conflicting factual testimony are noted.

**2.** Apparently, the firecrackers which may be purchased (but not legally exploded) in Indiana do not explode with sufficient thunder for Worstine.

of the PVC devices at a party on June 27, destroying a mailbox in one such explosion.[3]

On July 2, at a north Fort Wayne Amoco service station, Evans gave a few of the PVC devices to some 13 or 14 year old youths whom he knew. Immediately thereafter, Evans gave four of the PVC devices to the Amoco attendant, after Evans had unsuccessfully attempted to sell a few of the devices to the attendant. Later, suspecting that the PVC devices which Evans had given him were illegal, the Amoco attendant called the police. After a short investigation, the police[4] arrested Worstine and Evans for the present charges. The defendants admitted their involvement and cooperated with the authorities in recovering the unexploded devices. With this assistance, the authorities confiscated 13 additional PVC explosive devices from co-workers of Evans.

During a search of Worstine's home on July 3, Worstine directed the authorities to two PVC explosive devices located in his bedroom. At that same time Worstine also directed the officers to one can of black gun powder, two cans of an adhesive cement, pieces of cut PVC tubing, model hobby fuse, PVC end caps, and the previously constructed galvanized metal explosive device, all which were in a paper sack kept in Worstine's kitchen cabinet.

### The Indictment and the Statutes

The defendants are charged with violating the Internal Revenue Code, Chapter 53, "Machine Guns, Destructive Devices, and Certain Other Firearms", 26 U.S.C. § 5801, et seq. In relevant part, Chapter 53 provides that it is unlawful for any person:

(d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record; or

(e) to transfer a firearm in violation of the provisions of this chapter; or

(f) to make a firearm in violation of the provisions of this chapter.

26 U.S.C. § 5861(d), (e), and (f).

The seven count indictment charges Worstine with four counts, and charges Evans with three counts. In count one, the indictment charges that Worstine "did knowingly make twenty-eight (28) pipe bombs, firearms as defined by title 26, United States Code, Sections 5845(a)(8) and (f) ..." during the week of June 22, 1992. In count two, the indictment charges that Worstine "did knowingly transfer ten (10) pipe bombs, firearms as defined by title 26, United States Code, Sections 5845(a)(8) and (f) ..." on or about June 27, 1992. In count three, the indictment charges that Worstine "did knowingly transfer seventeen (17) pipe bombs, firearms as defined by title 26, United States Code, Sections 5845(a)(8) and (f) ..." on or about July 2, 1992. In count four, the indictment charges that Worstine "did knowingly possess three (3) pipe bombs, firearms as defined by title 26, United States Code, Sections 5845(a)(8) and (f) ..." on or about July 3, 1992.[5] In count five, the indictment charges that Evans "did knowingly possess seventeen (17) pipe bombs, firearms as defined by title 26, United States Code, Sections 5845(a)(8) and (f) ..." on or about July 2, 1992. In count six, the indictment charges that Evans "did knowingly transfer four (4) pipe bombs, firearms as defined by title 26, United States Code, Sections 5845(a)(8) and (f) ..." on or about July 2, 1992. In count seven, the indictment charges that Evans "did knowingly transfer thirteen (13) pipe bombs, firearms as defined by title 26, United States Code, Sections 5845(a)(8) and (f) ..." on or about July 3, 1992.

The defendants did not contest the fact that their explosive devices were not regis-

---

3. Evans later made restitution for this destroyed mailbox.

4. Police personnel for the Fort Wayne Police Department, the Allen County Sheriff's Department, and agents from the Bureau of Alcohol, Tobacco and Firearms investigated this matter.

5. These three devices included two made of PVC material and the one made of galvanized metal pipe.

tered to them in the National Firearms Registration and Transfer Record.[6] Rather, the determinative issue concerns the definition of the terms "firearm" and "destructive device" as used in title 26, United States Code, Sections 5845(a)(8) and (f). The relevant definitions are found in the following pertinent provisions of the statute (Chapter 53):

For the purpose of this chapter—

(a) Firearm.—The term "firearm" means (1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; (5) any other weapon, as defined in subsection (e); (6) a machinegun; (7) any silencer (as defined in section 921 of title 18, United States Code); and *(8) a destructive device.*

(b) Machinegun. [defined].

(c) Rifle. [defined].

(d) Shotgun. [defined].

(e) Any other weapon. [defined].

*(f) Destructive device.*—The term "destructive device" means (1) any explosive, incendiary, or poison gas (A) bomb, (B) grenade, (C) rocket having a propellent charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device; (2) any type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter, except a shotgun or shotgun shell which the Secretary finds is generally recognized as particularly suitable for sporting purposes; and (3) any combination of parts either designed or intend-

ed for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled. *The term "destructive device" shall not include any device which is neither designed nor redesigned for use as a weapon;*

. . . .

(g) Antique firearm. [defined].

26 U.S.C. § 5845 (emphasis added).

The defendants' entire case rests on the affirmative defense which is provided in the above emphasized § 5845(f) exception to the term "destructive device." By way of this affirmative defense, the defendants argue the exception provides that the term "destructive device" does not include the devices which they made, possessed, or transferred because their devices were designed as firecrackers, and were not designed "for use as a weapon."

### *Devices Which Are Not Designed As a Weapon*

Courts have clearly held that pipe bombs are within the statute's definition of "destructive devices." *United States v. Charles,* 883 F.2d 355, 357 (5th Cir.1989), *cert. denied* 493 U.S. 1033, 110 S.Ct. 750, 107 L.Ed.2d 767 (1990); *United States v. Lisk,* 559 F.2d 1108, 1109 (7th Cir.1977). However, the court is not aware of reported cases where this statute has been used to prosecute persons who constructed or possessed exploding firecracker-type devices from small diameter brittle plastic PVC tubing, such as the ½″ diameter PVC tubing used by Worstine. Nor has the government brought any such cases to the court's attention in the three briefs which the government has filed in this matter.

█ In this criminal prosecution, the government must prove its case beyond a reasonable doubt. The defendants have raised the "not designed as a weapon" exception as an affirmative defense. The government must present evidence to overcome this affirmative defense. Since the interpretation of the term "destructive de-

---

**6.** The undisputed evidence is that the defen-   dants did not register the devices at issue.

vice", as employed in the statute is at issue, the court must resolve any uncertainties as to the meaning of the statutory construction in favor of those accused. *United States v. Bass,* 404 U.S. 336, 348, 92 S.Ct. 515, 523, 30 L.Ed.2d 488 (1971) ("legislatures, and not courts should define criminal activity"); *Liparota v. United States,* 471 U.S. 419, 427, 105 S.Ct. 2084, 2089, 85 L.Ed.2d 434 (1985) (citing the "longstanding" "rule of lenity"); *United States v. Podolsky,* 625 F.Supp. 188, 199 (N.D.Ill 1985) (narrowly construing 26 U.S.C. § 5845(f) to grant, in part, defendant's motion for judgment of acquittal), *aff'd on other grounds,* 798 F.2d 177 (7th Cir.1986).

The defendants argue that the statute should be interpreted consistent with their subjective intention to create and possess firecrackers, which were not intended to be used as weapons.[7] The government argues that the subjective intent of the defendants' is not relevant. The government asserts that the defendants' devices are objectively destructive devices as contemplated by the statute because these devices can, and in fact, did cause property destruction by fragmentation.[8]

The defendants find support in *United States v. Oba,* 448 F.2d 892, 894 (9th Cir.1971), *cert. denied* 405 U.S. 935, 92 S.Ct. 979, 30 L.Ed.2d 811 (1972), in which the court discussed the legislative history[9] of § 5845(f) and applied a "clear reading" of the statute to find that the defendant's subjective intention was relevant in determining whether the device was a "destructive device." However, the government points to cases which have stated that a defendant's intended design is irrelevant in applying this statute. *See, United States v. Posnjak,* 457 F.2d 1110, 1116 (2nd Cir. 1972) (also citing the legislative history, and holding that the term "designed" refers to "objective, physical structure" and not "intent or schemes of the possessor."); *United States v. Dalpiaz,* 527 F.2d 548 (6th Cir.1975); *United States v. Tankersley,* 492 F.2d 962, 966 (7th Cir.1974).[10]

Despite several cases interpreting the "not designed for use as a weapon" affirmative defense of 26 U.S.C. § 5845(f), the issue of whether a subjective or an objective analysis should be employed to determine whether a small firecracker-type PVC apparatus is a "destructive device" remains an unresolved matter. *See* Annotation, "Destructive Device" 25 ALR Fed. 344 § 7

---

**7.** There was no evidence to the contrary of this subjective intention. In fact, all of the evidence suggests that these two defendants never intended to use the devices as weapons. Throughout the investigation and interviews of both Worstine and Evans, both defendants consistently referred to the explosive devices as "firecrackers", even though the investigators consistently referred to the devices as "pipe bombs."

**8.** The government points to Evans' destruction of the mailbox as evidence of the destructive quality of these devices. The government also argued that Worstine exploded one of the devices in his yard, causing PVC fragments to damage a neighboring mobile home. The evidence was inconclusive as to whether Worstine's explosion damaged the neighboring mobile home.

**9.** The government makes much of the legislative history of this statute, as interpreted in *United States v. Posnjak,* 457 F.2d 1110, 1116 (2nd Cir. 1972). However, resorting to legislative history for interpretation of ambiguous language, especially in the context of criminal statutes, is a precarious task which should be undertaken with much circumspection. 1 LaFave and

Scott, *Substantive Criminal Law,* § 2.2(e) "Interpretation of Criminal Statutes" (1986).

**10.** The government asserts that "the Seventh Circuit [has] held that intent is irrelevant under [26 U.S.C. § 5845] subsection (f)(1). *United States v. Tankersley,* 492 F.2d 962, 966 (7th Cir. 1974)." However, the Seventh Circuit's *dicta* in *Tankersley* which the government cites is not a *holding,* but rather an explanation of the Second Circuit's *Posnjak* case.

Significantly, the *Tankersley* explanation of *Posnjak* explicitly states that subjective analysis regarding prosecutions under § 5845(f)(1) and (2) is irrelevant when the device is "clearly designed" as "a destructive device" as defined in one of those subsections, or "[w]hen it is equally clear that" the device "does not fall within one of those categories." *Tankersley,* 492 F.2d at 966. The *Tankersley* opinion does not address the propriety of subjective analysis in cases where the objective design of such devices is unclear.

If all of the exploding devices at issue in the instant case were "clearly designed" as "destructive devices" this would be a simple case. This is not a simple case.

(1992 Supp.); *United States v. Reindeau*, 947 F.2d 32, 35–36 (2nd Cir.1991).

Regardless of whether the cases purportedly proclaimed the test to be an objective or subjective standard, the courts have often considered the totality of the circumstances in determining whether the device in question was a "destructive device" within the meaning of 26 U.S.C. § 5845(f). *See Tankersley*, 492 F.2d at 966 (finding that applying a subjective standard to a prosecution under § 5845(f)(3) [non-assembled component parts of destructive devices], was proper under "facts of the instant case", which included a Molotov cocktail consisting of bottle, firecracker, tape, and paint remover which the defendants admittedly planned to use to harass the intended victim during a labor strike); *Charles*, 883 F.2d at 357, (while not commenting on the objective versus subjective intention tests, finding sufficient evidence in this § 5845(f)(1) case to sustain conviction despite defendant's professed subjective intent to create mere "percussion devices" designed to stun fish when the devices were confiscated in a raid of a suspected large drug operation); *Oba*, 448 F.2d at 893–894 (finding the subjective intent of defendant relevant, and that seven sticks of dynamite wrapped in copper wire and equipped with fuse and blasting caps designed to dynamite the city of Eugene, Oregon is a destructive device); *Reindeau*, 947 F.2d at 33–36 (stating that the subjective intention of the defendant may be relevant in a § 5845(f)(1) case to the trier of fact in determining whether a metal "pipe bomb" was designed as a weapon for retribution of an earlier shooting, or was merely a "firecracker commonly used by farm boys in the area"); and *United States v. One 1972 Chevrolet El Camino Pickup Truck*, 369 F.Supp. 755, 756 (D.Neb.1973) (in this forfeiture action, while discussing only objective criteria, the court held that "fuze assemblies" which make an explosive noise similar to a firecracker, and which are a component of the military's practice hand grenades falls within the exception because of the relatively small destructive capability of the device); *but see Posnjak*, 457 F.2d at 1116 (subjective intention of defendant irrelevant; commercial dynamite with unattached fuse and caps not "destructive device" despite defendant's admission to federal agent that the devices were intended to be sold to revolutionaries for destructive purposes).

### *Worstine's Galvanized Metal Device*

The physical characteristics of the galvanized metal device as compared to the brittle plastic PVC devices prompts the court to address the two different type devices distinctly. In a footnote to a *per curiam* opinion the Seventh Circuit noted, without comment, that "[a] pipe bomb is a firearm under 26 U.S.C. §§ 5845(a) and (f)." *United States v. Lisk*, 559 F.2d 1108, 1109 n. 1 (7th Cir.1977) (the defendant was accused of possessing a sixteen inch *metal* pipe bomb, although the opinion solely discussed Fourth Amendment search and seizure law).

Pursuant to the facts of the instant case, the court finds that regardless of Worstine's original intentions to create a "firecracker", the exploding device Worstine manufactured from a five inch length of 1″ diameter galvanized metal pipe, black gun powder, fuse, and galvanized metal end caps is a "destructive device" as defined in 26 U.S.C. § 5845(f), and does not fall within the exception found therein.

In fact, Worstine admitted that after constructing this galvanized pipe exploding device, he subjectively thought it too potentially dangerous. The government's expert witness testified that this galvanized pipe bomb could easily cause serious injury or death. No defense witness refuted this testimony. A reasonable person would have known that this metal pipe device was a bomb, and would have immediately dismantled it after inadvertently manufacturing such a device.

Subsection 5845(f) explicitly explains that the term "destructive device" encompasses an explosive bomb. 26 U.S.C. § 5845(f)(1)(A). Objectively, this galvanized metal device is clearly a pipe bomb. This device looks like a pipe bomb, was made of the same type of pipe and explo-

sive materials as a pipe bomb, and has the same capability for destruction of life or property as a pipe bomb.

Accordingly, the court finds that beyond a reasonable doubt Worstine is guilty of possessing one galvanized metal pipe bomb firearm, as charged in count four of the indictment.

### The PVC Devices

■ While the court finds that the galvanized metal exploding device was objectively designed as a weapon, the same conclusion is not as obvious concerning the brittle plastic PVC explosive devices. The physical characteristics of the PVC devices hinder such a clear objective finding.

In *Tankersley,* the Seventh Circuit unquestionably applied the subjective intent standard to determine whether a device was intended to be a § 5845(f)(3) "combination of parts ... [from which] a destructive device may be readily assembled." *Id.* 492 F.2d at 966. However, in the same opinion, that court did not specifically prohibit courts from considering subjective intent when it is unclear as to whether a device objectively falls within the § 5845(f)(1) prohibition on explosive bombs, etc. *Id.* 492 F.2d at 966; *see also* the related discussion herein at n. 10, *supra.*

As a subsequent panel of the same circuit observed, the *Tankersley* court:

> had no difficulty in finding under subsection (f)(3) [the component parts section] that the *intent* to convert innocuous materials into a destructive device, *i.e.,* an incendiary bomb in that case, was sufficient to sustain the [conviction].

*Burchfield v. United States,* 544 F.2d 922, 924 (7th Cir.1976) (emphasis added), *cert. denied* 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977). In fact, at 544 F.2d at 924, the *Burchfield* panel specifically rejected the wholly objective analysis of *Posnjak,* 457 F.2d 1110, relied upon by the government, and favorably cites the subjective inquiry of *Oba,* 448 F.2d at 894, which is advanced by the defendants.

Recent criticism of the strict approach of *Posnjak* comes from the very circuit which issued that opinion twenty years ago. In *Reindeau,* 947 F.2d 32, a case similar to the case at bar, the government prosecuted Reindeau and others on a § 5845(f)(1) charge for possessing a pipe bomb. There, the Second Circuit held that the intention of the defendants in making the device (the defendants maintained they were making a firecracker), coupled with objective expert testimony about the physical structure of the device "could raise a reasonable doubt" as to whether the device was designed as a weapon or was designed merely as a firecracker. *Id.* 457 F.2d at 36. That court rejected the government's contention that pursuant to *Posnjak,* 457 F.2d 1110, the sole criteria in evaluating whether the device falls within the ambit of § 5845(f)(1) is the objective design of the device:

> [E]ven applying an objective test, we also pointed out in *Posnjak* that a defendant would be exempted from the statute if it could be shown that "it was not designed as a weapon."

*Reindeau,* 947 F.2d at 36.

■ As, in this circuit, subjective intent is relevant to determine whether an accused attempted to convert non-assembled innocuous materials into a destructive device, *see Tankersley,* 492 F.2d at 966, so too is subjective intent relevant to determine whether an accused actually assembled a destructive device when the objective physical characteristics of that device creates substantial doubt as to whether the device was clearly designed as "destructive device" weaponry as defined in 26 U.S.C. § 5845(f)(1).

The government contends that the mere fact that an explosive device produces fragments upon explosion renders such a device a "destructive device" designed as a weapon, outside of the "not designed as a weapon" exception of § 5845(f). The government contends that as these PVC devices produce fragments when exploded, such PVC devices are "destructive devices."[11]

---

11. The government's suggested definition of "destructive devices" as inclusive of all fragmenting

explosives would render much of the exception of § 5845(f) moot, and is an impermissible over-

Mr. Shatzer, the expert for the government testified that the PVC devices could cause injury because brittle plastic PVC fragments fly through the air at a high rate of speed when the PVC tubing explodes. In a controlled test explosion of one of these PVC explosive devices which Mr. Shatzer conducted, a few PVC fragments did penetrate a cardboard garment box when the device was exploded inside of the box at a distance of about one foot from the four walls of the box. Mr. Kosanke, the expert for the defendant also conducted a controlled test explosion of a similar device which tended to show a relatively low risk of serious injury. Mr. Kosanke's controlled test explosion demonstrated that the PVC fragments would not penetrate denim covering over a piece of ceiling tile attached to plywood, when the device was exploded from a distance of three feet. The expert testimony presented by the government and the defendants created a substantial doubt as to whether the objective physical characteristics of the PVC devices clearly warranted the "destructive devices" weaponry classification of 26 U.S.C. § 5845(f)(1).[12]

The evidence wholly suggests that these two defendants never intended to use the PVC explosive devices as weapons. *See* n. 7, *supra.* Worstine claims he designed the PVC devices as firecrackers, or "pyrotechnics" in the nomenclature of the exception found at § 5845(f). The officers and agents for the government testified that both defendants repeatedly referred to the PVC devices as "firecrackers." None of the persons who received any of the PVC devices indicated any intention to use the devices as weapons. The late June and early July dates involved herein are entirely consistent with Worstine's and Evans' explanation that they intended to use the PVC devices as Fourth of July "fireworks." Both the government's and the defendants' controlled tests demonstrated that the PVC devices had relatively meager destructive capability. Neither defendant is suspected of association with terrorist organizations. Neither defendant threatened anyone with the PVC devices.

Therefore, considering the totality of the circumstances, including the objective physical characteristics of the PVC devices and the subjective intention of the defendants, and applying the rule of lenity, the court finds that the government has failed to sufficiently rebut beyond a reasonable doubt the affirmative defense that the PVC devices possessed by Worstine and Evans "were neither designed nor redesigned for use as a weapon." 26 U.S.C. § 5845(f).[13]

## Conclusion

Accordingly, the court hereby finds that defendant David W. Evans is NOT GUILTY of violations of 26 U.S.C. § 5861, as charged in counts five, six and seven of the indictment. The court likewise finds that defendant Sandy L. Worstine is NOT GUILTY of violations of 26 U.S.C. § 5861, as charged in counts one, two, and three of the indictment. However, the court further finds that defendant Sandy L. Worstine is GUILTY of a violation of 26 U.S.C. § 5861, possession of one galvanized pipe bomb firearm on July 3, 1992, as charged in count four of the indictment.

broad construction of this penal statute. *See Liparota,* 471 U.S. at 427, 105 S.Ct. at 2084. If the Congress had intended to define "destructive device" as "any fragmenting explosive", at least theoretically, Congress had such an opportunity, but declined to implement that definition.

**12.** The fact that one of the PVC devices destroyed a mailbox is not dispositive. The defendants' expert testified that even an M–80, which the government concedes is objectively not a "destructive device", could destroy a mailbox without fragmentation because a more explosive type of powder is found in an M–80 than was used in the PVC devices. Mailbox destruction is not this court's test for weaponry.

**13.** The court does not condone Worstine's and Evans' manufacture and/or possession of explosive PVC devices. However, as counsel for Worstine has suggested, with respect to the PVC devices, perhaps the defendants could have more appropriately been indicted for possession of explosive materials in violation of 18 U.S.C. § 842, rather than for 26 U.S.C. § 5861 possession of destructive devices.